UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 04-60001-CR-COOKE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSE PADILLA,

    Defendant.
_____/



## JOSE PADILLA'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND ISSUE WRITS AD TESTIFICANDUM

Jose Padilla, through counsel, pursuant to Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure, and the Fourth and Fifth Amendments to the United States Constitution, moves this Court to suppress any and all physical evidence seized from Mr. Padilla in Chicago on May 8, 2002. Mr. Padilla requests an evidentiary hearing, and the following memorandum of law sets forth the grounds in support of this motion.

### I. BACKGROUND

1. Mr. Padilla has been charged with violations of 18 U.S.C. §§ 956(a)(1), 371 and 2339A(a) and made his initial appearance on January 6, 2006.

2. On May 8, 2002, Mr. Padilla arrived at Chicago's O'Hare International Airport aboard an international flight from Zurich, Switzerland. *See Rumsfeld v. Padilla*, 542 U.S. 426, 430 (2004).

3. As Mr. Padilla stepped off the plane, agents of the Federal Bureau of Investigation, executing a material witness warrant issued by the United States District Court for the Southern District of New York, took Mr. Padilla into custody. *Id.*

4. At the time of his arrest, agents seized items of personal property from Mr. Padilla. The items seized included, among other items, a quantity of United States currency, a cell phone, a personal telephone book, and various forms of identification.

5. The material witness warrant was issued on an affidavit sworn to by Special Agent Joe Ennis of the Federal Bureau of Investigation ["Ennis affidavit"]. Both the material witness warrant signed by Chief Judge Michael B. Mukasey of the United States District Court for the Southern District of New York and the Ennis affidavit have been unsealed and are attached jointly to this motion as *Exhibit A*.

6. The information contained in the Ennis affidavit comes exclusively from two sources that are described respectively as "a Confidential Source ("CS-1") and as "SUBJECT-1."

7. Based on documents filed by the United States government in this and other proceedings, it is apparent that the person identified as "CS-1" in the Ennis affidavit is actually Abu Zubayda who is currently in the custody of the United States government.

2

8. Similarly, it is apparent that the person identified as "SUBJECT-1" in the Ennis affidavit, is actually Binyam Ahmed Muhammad, a/k/a Talha al kini, a/k/a Fouad Zouaoui. Mr. Mohammad is currently detained at the United States Navel Base, Guantánamo Bay, Cuba.

9. Mr. Mohammad is one of ten individuals who have had charges brought against them before Military Commissions which were established by the President of the United States. A copy of the charging instrument filed against Mr. Mohammed before the Military Commission being held at the base at Guantánamo Bay is attached as *Exhibit B*.

10. As stated above, from a fair reading of the Military Commission document filed by the United States government against Mr. Mohammad, it is clear that Abu Zubayda and Binyam Ahmed Muhammad are the only sources of information relied on the government to establish probable cause in their application for a material witness warrant to arrest Mr. Padilla.

11. Abu Zubayda was captured in Pakistan in a joint American and Pakistani military operation. Abu Zubayda's capture was reported in the media. According to media reports, Abu Zubayda was seriously wounded with gunshots to the stomach and groin when he was captured.

12. Footnote number 1 of the Ennis affidavit indicates that Abu Zubayda had provided information that was reliable and which had been corroborated. It also indicates that Abu Zubayda provided information with the intent "to

mislead and confuse U.S. law enforcement." The footnote states that Abu Zubayda "was being treated with various types of medication." The Ennis affidavit failed to state what medications Abu Zubayda had been given, the strength of the medications, the reason he had been given the medications or the effect the medications may have had on Abu Zubayda's ability to provide accurate information. The Ennis affidavit also failed to mention that Abu Zubayda had received multiple gunshot wounds.

13. Paragraph 4(a) of the Ennis affidavit states that "on or about April 23rd CS-1 (Abu Zubayda) was shown two photographs." The Ennis affidavit goes on to state that Abu Zubayda identified one of the photographs as SUBJECT-1 (Binyam Muhammad) and the other photograph as a picture of Jose Padilla.

14. The Ennis affidavit indicates that "one of the photographs was taken from the U.S. passport of Jose Padilla, which was recovered from PADILLA's person." The Ennis affidavit does not state how, when or where Mr. Padilla's U.S. passport "was recovered from PADILLA's person."

15. The government could not have shown Abu Zubayda the photograph from the passport that Mr. Padilla had with him when he returned to the United States on May 8, 2002. According to a stipulation of fact submitted to the United States District Court for the District of South Carolina (a copy of the stipulation is attached as *Exhibit C*), Judge Mukasey signed the material witness warrant five minutes before the plane carrying Mr. Padilla and his

passport landed in Chicago.

16. The government has provided a copy of an application submitted by Mr. Padilla on February 16, 2001, to the office of the American Consulate General, Karachi, Pakistan, to replace a passport that he reported as having been lost.

17. Binyam Muhammad was arrested in Karachi, Pakistan on or about April 10, 2002.

18. Binyam Muhammad has informed his attorney that after his arrest in Karachi, Pakistan, he was held in prison where he was hung from the ceiling of his cell with leather straps. Binyam Muhammad was whipped by his Pakistani jailers but they asked him no questions as they had no common language. Binyam Muhammad reports to his counsel that he was questioned by four agents who he believes were FBI agents. He was whipped by the jailers before and after being questioned by the FBI agent who asked him questions about Mr. Padilla. Binyam Muhammad was later flown to Morocco where he was further questioned about Mr. Padilla and tortured by means of a razor being used to make incisions on his chest and his genitals.

19. There is nothing in the Ennis affidavit from which Judge Mukasey could have determined that Mr. Muhammad had been abused by his Pakistani jailers in between the interrogation session with the FBI.

## II. MEMORANDUM OF LAW

**Suppression of Evidence**

The physical property seized from Mr. Padilla upon his arrest on the material witness warrant should be suppressed because the affidavit submitted with the application for the material witness warrant failed to inform the issuing court of the following facts that were critical to the determination of probable cause:

A. That Abu Zubayda was suffering from multiple gunshot wounds at the time he provided the information included in the affidavit;

B. What medical attention Abu Zubayda had received or if medical attention, other than drugs, was withheld while he was interrogated;

C. How the government came into possession of a passport that Mr. Padilla had "lost"; and

D. That Binyam Muhammad was subjected to torture between interrogation sessions with FBI.

It is beyond dispute that victims of torture provide unreliable information. A torture victim will say whatever his abuser wants to hear to make the torture stop. At a hearing, it is respectfully submitted that the defense will be able to establish that Abu Zubayda was in such medical extremis that he was unable to provide reliable information. At a hearing, the defense expects to be able to establish by a preponderance of evidence that Binyam Muhammad was being tortured, if not at the exact moment he was being interrogated, sufficiently contemporaneously so as to render the time between his being tortured and his

6

being interrogated meaningless.

It is respectfully submitted that these omissions make the warrant invalid as it was issued on the basis of an affidavit that distorted the facts in an apparent disregard for the truth. The Supreme Court held in *Franks v. Delaware*, 438 U.S. 154, 156 (1978) that fruits of a search warrant must be suppressed when it is shown at a hearing that the affidavit given in support of the warrant contained false statements or statements made with reckless disregard for the truth and the remaining portion of the affidavit is insufficient to establish probable cause. The omission of material facts from an affidavit given in support of a search warrant violate the requirements of the Fourth Amendment and require suppression of evidence obtained pursuant to a warrant issued on the basis of such a defective affidavit. *See, Dahl v. Holley*, 312 F.3d 1228, 1235 (11th Cir. 2002).

Furthermore, the government cannot salvage the search warrant by asserting a good faith defense. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court held that evidence should not be suppressed when the seizing officer acted in good faith reliance upon a search warrant that was later found to be unsupported by probable cause. The *Leon* good faith exception to the requirement that a warrant must be based on probable cause does not help the government in this matter. The *Leon* good faith exception has been held inapplicable to situations where the warrant application misleads the issuing court because it contained false statements or omitted facts necessary to the finding of probable cause. *See, United States v. Corey*, 297 F.3d 1308, 1313 (11th Cir. 2002).

Moreover, the United States has signed an international agreement banning torture.

*See* United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85; *See also* Geneva Convention (III) Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 1955, art. 118, 6 U.S.T. 3316, 3406, T. I. A. S. No. 3364.  The purpose of the exclusionary rule is to deter official misconduct. *Leon,* 468 U.S. at 900.  There is no more base misconduct that an official can commit than to torture another human being.  In this case, there is reason to believe that the information submitted to obtain the material witness warrant was obtained by means of torture.  The use of such illegally obtained information without the disclosure of the conditions under which it was obtained should not be tolerated.  This is equally true under a Fourth Amendment analysis which would find a warrant based on information obtained by torture to be an "unreasonable" search, or under a Fifth Amendment Due Process analysis where such methods are "too close to the rack and the screw to permit of constitutional differentiation." *Rochin v. California*, 342 U.S. 165, 172 (1952); *see also Chavez v. Martinez*, 538 U.S. 760, 773 (2003) ( Supreme Court holding that official "torture or abuse that results in a confession" that is not used at trial may violate the Due Process clause of the Fifth Amendment when it "shocks the conscience.").

It is respectfully submitted that the use of information obtained by torture, whether the torture is disclosed or undisclosed, is an act so unlawful and so contrary to the core values of this Nation as to both shock the conscience and render any search based on such information unreasonable.  It is respectfully requested that this Court should hold a hearing so that the circumstances of the interrogation of both Abu Zubayda and Binyam Muhammad

can be fully established. At the conclusion of such a hearing it is respectfully submitted that the Court will enter an Order suppressing all evidence seized from Mr. Padilla at the time of his arrest in Chicago.

### Application for Writs *Ad Testificandum*

As noted above, both Abu Zubayda and Binyam Muhammad are essential witnesses for Mr. Padilla's defense. Both Abu Zubayda and Binyam Muhammad are in the custody of the government of the United States. Binyam Muhammad is currently being held at the United States Navel Base, Guantánamo Bay, Cuba. The location of Abu Zubayda is unknown to undersigned counsel.

Inasmuch as defense counsel have no access to either Abu Zubayda or Binyam Muhammad, counsel must rely on the compulsory process clause of the Sixth Amendment. Accordingly, counsel respectfully request that this Court issue a writ *ad testificandum* pursuant to 28 U.S.C § 2241(c)(5) requiring the government to produce both Abu Zubayda and Binyam Muhammad so that they can be interviewed by counsel for Mr. Padilla and testify at the hearing sought above.

### III. CONCLUSION

Wherefore, Jose Padilla respectfully requests that this Court suppress the property seized from him at the time of his arrest. Mr. Padilla requests an evidentiary hearing on this matter and the issuance of a writ *ad testificandum* requiring the production of both Abu Zubayda and Binyam Muhammad so that they can be interviewed by counsel and testify at

the above requested hearing.

        Respectfully submitted,

By: *Paul M. Karch*
for Andrew G. Patel, Esq.
111 Broadway, Suite 1305
New York, New York 10006.
Tel/Fax: (212) 349-0230/346-4665

Michael Caruso
Acting Federal Public Defender
Florida Bar No. 0051993

Anthony J. Natale
Supervisory Assistant Federal Public Defender
Florida Bar No. 296627

Orlando do Campo
Supervisory Assistant Federal Public Defender
Florida Bar No. 156582
150 West Flagler, Suite 1700
Miami, Florida 33130
Tel/Fax (305) 530-7000/ (305) 536-4559

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument was delivered by U.S. mail this 31 day of May, 2006 to those individuals on the attached service list.

Andrew G. Patel, Esq.