04-60001.rr7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 04-60001-CR-COOKE/BROWN

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

JOSE PADILLA, et al.,

     Defendants.

_____/

## CORRECTED REPORT AND RECOMMENDATION (as to footnote 9)*

**This matter** is before this Court on Defendant Jose Padilla's Motion to Suppress Physical Evidence and Issue Writs Ad Testificandum, filed May 31, 2006. The Court has considered the Motion, the Response and the Reply.

## FACTS

Defendant moves to suppress all physical evidence seized from him on May 8, 2002 after his arrival at Chicago's O'Hare International Airport aboard an international flight from Zurich, Switzerland. The facts surrounding Defendant's arrest pursuant to a material witness warrant on that day are fully set forth in this Court's Report and Recommendation on Defendant's Motion to Suppress Statements, and the Court adopts that discussion by reference herein.

The material witness warrant, which was signed by Chief Judge Michael B. Mukasey of the United States District Court for the Southern District of New York, was issued on an affidavit sworn to by Special Agent Joe Ennis of the Federal Bureau of Investigation ("the affidavit"). The information in the affidavit comes almost exclusively from two sources that are described respectively as "a

---

\*   Due to computer error, the entire text did not appear in the original footnote.

Confidential Source" ("CS-1"), who Defendant maintains is Abu Zubayda, currently in the custody of

the U.S. government, and "SUBJECT-1," who Defendant maintains is Binyam Ahmed Muhammed,

a/k/a Talha al kini, a/k/a Fouad Zouaoui, who is currently detained at the United States Naval Base in

Guantanamo Bay, Cuba. The information provided by these witnesses was offered to establish that

Defendant had information material to a grand jury investigating past and future attacks against the

United States by members and associates of Al Qaeda.[1]

---

[1]In sum, the affidavit recites that CS-1 referred to inquiries by a person whom he initially referred to as "South American" and then later identified as "Abdullah Al Muhajir," and a second individual referred to as Subject-1. CS-1 was shown a photograph which "was taken from the U.S. passport of Jose Padilla, which had been recovered from Padilla's person," and identified him as Abdullah Al Muhajir. Aff. ¶4a. CS-1 states that these two individuals had asked him for his opinion on their plan to build an explosive device that would combine uranium or other nuclear or radioactive material with an "ordinary" explosive device ("dirty bomb"), and then detonate the dirty bomb in the United States. CS-1 further stated that he did not think that the two individuals were members of Al Qaeda, that he believed the dirty bomb was still in the idea phase, as they did not have any radioactive material, but had mentioned stealing some from an unnamed university, that he believed that they had consulted an unidentified internet website to learn how to assemble a dirty bomb, and that Padilla seemed very familiar with the Washington, D.C. area. CS-1 further stated that they asked him to put them in touch with another individual known by CS-1 to be a member of Al Qaeda ("Subject-2"). CS-1 told Padilla and Subject-1 that Subject 2 would be interested in working with them because they were not Arab and would draw less attention, they could travel freely with passports that would not draw much attention, and they were willing to work. He further stated that Subject-1 was willing to become a martyr, but Padilla was not. Aff. ¶¶4-5.

The affidavit further recites that Subject-1 had been detained at an airport in Pakistan, on suspicions (later confirmed) that he had a fraudulent non-U.S. passport. It further states that in an interview (not performed by Special Agent Ennis), Subject-1 stated that he and Padilla traveled together to Pakistan at the behest of CS-1 to receive training in "wiring explosives," and that while in Pakistan he and Padilla researched the construction of a uranium-enhanced device, which would be detonated in the United States. Subject-1 stated that they discussed this plan with CS-1, who referred them to other members of Al Qaeda for further discussion of the operation, and that Al Qaeda officials held at least two separate meetings with Padilla, in which (Subject-1 believed) they directed Padilla to return to the United States to conduct uranium reconnaissance on behalf of Al Qaeda in the United States. Finally, the affidavit refers to a separate interview with Subject-1's wife, in which she told law enforcement authorities that Subject-1 "would often become emotional and cry when he discussed his willingness to die for his God."

In his Motion, Defendant argues the evidence must be suppressed because the affidavit failed to inform the issuing court of the following "facts," which Defendant maintains were "critical to the determination of probable cause":[2]

A      That Abu Zubayda was suffering from multiple gunshot wounds at the time he provided the information included in the affidavit;

B.      What medical attention Abu Zubayda had received or if medical attention, other than drugs, was withheld while he was interrogated;

C.      That the government somehow came into possession of a passport that Defendant had lost and later showed it to CS-1 and the government fails to explain how this happened; and

D.      That Binyam Muhammad was subjected to torture between interrogation sessions with the FBI.

## DISCUSSION

Defendant argues that the above referenced "omissions" render the warrant invalid because it was issued "on the basis of an affidavit that distorted the facts in an apparent disregard for the truth," in violation of Franks v. Delaware, 438 U.S. 154 (1978). Mot. p. 7. Defendant additionally argues that the warrant was based on information which was obtained under an "unreasonable search" under the Fourth Amendment, and/or under a Fifth Amendment Due Process analysis where "such methods are 'too close to the rack and the screw to permit of constitutional differentiation'." Mot. p. 8 (quoting

---

[2]In his Reply and attached Affirmation Defendant alleged, for the first time, additional alleged falsehoods and misrepresentations; those claims are improperly raised and will not be addressed by the Court.

Rochin v. California, 342 U.S. 165, 172 (1952)).[3]

**Necessary Showing for a Franks Hearing**

In order for Defendant to be entitled to a hearing under Franks, Defendant must make a "substantial preliminary showing" that the affidavit contained an intentional or reckless falsehood, or failed to include material information in the affidavit, and that the challenged statement or omission was necessary to the finding of probable cause.  438 U.S. at 155-56; see also United States v. Arbolaez, 450 F.3d 1283, 1294 (11th Cir.  2006).  The allegations of deliberateness or recklessness "must be accompanied by an offer of proof." Id.  (quoting Williams v. Brown, 609 F.2d 216, 219 (5th Cir. 1979) (quoting Franks, 438 U.S. at 171)).  "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." Id.

As to each of the alleged "facts," Defendant has failed to provide any proof that Special Agent Ennis knew or should have known of them, such that the failure to include them was either intentional and/or reckless.[4]   As an initial matter, Defendant offers no proof, but only allegations as to the identities of CS-1 and Subject 1.  Indeed, in the Affirmation of Defendant's attorney, Andrew G. Patel, which Defendant offers in support of his motion, Mr. Patel states, *inter alia,*

> In the Ennis affidavit, ... it is believed that CS-1 is meant to be Abu Zubaydah, Subject-1 is meant to be Binyam Mohamed, and Subject-2 is meant to be Khalid

---

[3]Defendant requests that this Court issue Writs Ad Testificandum to both Abu Zubayda and Binyam Ahmed Muhammed, claiming that at an evidentiary hearing, he "will be able to establish that Abu Zubayda was in such medical extremis that he was unable to provide reliable information" and that "Binyam Muhammad was being tortured, if not at the exact moment he was being interrogated, sufficiently contemporaneously so as to render the time between his being tortured and his being interrogated meaningless." Mot. p. 6.

[4]As the Government notes, the Court must consider Special Agent Ennis's knowledge of facts on or about May 8, 2002, as learned during his investigation, and with the assistance of conversations with other law enforcement officers and the review of documents and reports prepared by other officers, as opposed to facts which may have come light since that time.

> Sheikh Mohammed. ... This assumption, which the government has not disputed, may be wrong. The statements made about Mr. Mohamed seem to be so obviously false that perhaps Subject-1 is not meant to be Mr. Mohamed. ...

Patel Aff. ¶24. Therefore, not only has Defendant offered no proof that Subject-1 is Binyam Mohamed, he in fact offers proof that suggests he is not. If the proof as to the identities of CS-1 and Subject-1 fails, which it does, the remainder of Defendant's position must fail as well.

Moreover, Special Agent Ennis states in the affidavit that the information he provides as to the interview with CS-1 was "[b]ased on my review of the reports of [interviews of CS-1 by other agents] and on my conversations with other law enforcement officers." Aff. ¶4. As to Subject-1, he states that he has "reviewed reports prepared based on [an interview in or about early April 2002], and ha[s] spoken with other law enforcement officers regarding this interview." Aff. ¶5. There is no averment in the affidavit that Special Agent Ennis had any personal knowledge of the circumstances alleged by Defendant as to the treatment of either CS-1 or Subject-1. Specifically with respect to Subject-1, the Government represents that "[n]either the affiant nor the agents he consulted with as part of the investigation that led to the issuance of the Material Witness Warrant had any knowledge that Subject-1 had been tortured, and/or that reports reviewed about the interviews of Subject-1 contained information that was the product of torture." Resp. p. 15.

Defendant attempts to resolve this dilemma by arguing that a hearing should be held due to "the government's monopoly on access to relevant information." Defendant offers no legal support for this argument, which in essence, would do away with the "substantial preliminary showing" requirement of Franks.[5] Defendant additionally relies on "the doctrine of willful blindness or deliberate ignorance,"

---

[5] As to Defendant's request for the Court to issue Writs Ad Testificandum, as the Court noted in Arbolaez, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." 450 F.3d at 1294 (quoting Williams v. Brown, 609 F.2d 216, 219 (5th Cir. 1979) (quoting Franks, 438 U.S. at 171)).

where knowledge can be imputed to a party "who knows of a high probability of certain conduct and purposely contrives to avoid learning of it." <u>United States. v. Baxter Int'l., Inc.</u>, 345 F.3d 866, 902 (11th Cir. 2003). Again, Defendant offers no proof that Special Agent Ennis should know of the alleged conduct concerning CS-1 and/or Subject-1 or that he purposely contrived to avoid learning of it.

Because Defendant has failed to make a "substantial preliminary showing" that Special Agent Ennis acted either intentionally or recklessly with respect to the contents of the affidavit, Defendant is not entitled to a <u>Franks</u> hearing. Moreover, even if Defendant had established this element, he has failed to establish that the challenged statements or omissions were necessary to the finding of probable cause, as further discussed below.

### (1) and (2) - Medical Condition of CS-1

The "facts" surrounding CS-1's medical condition and treatment relate to the credibility of the information that CS-1 was providing. As the Government notes, Agent Ennis advised in the affidavit that CS-1 had not, at times, been completely candid with interviewers, and was being treated with "various types of medication," thus already placing CS-1's credibility at issue. Moreover, as the affidavit reflects, a sufficient portion of the information provided by CS-1 as it relates to Defendant's potential as a material witness was corroborated by information gained in separate interviews with Subject-1 and his wife. <u>See</u> <u>United States v. Awadallah</u>, 349 F.3d 42, 65 (2d Cir. 2003) ("The ultimate inquiry is whether, after putting aside erroneous information and material omissions,' there remains a residue of independent and lawful information sufficient to support probable cause.'") (citations omitted).

The Court agrees that even if Special Agent Ennis was or should have been aware of the "multiple gunshot wounds" and the exact nature of medical attention that was being given to CS-1, that information was not essential for a finding of probable cause. <u>See</u> <u>United States v. Novaton</u>, 271 F.3d

968, 987 (11th Cir. 2001).

### (3) **Government's Possession of Defendant's Passport**

The third claim raised in the Motion concerns Special Agent Ennis's failure to disclose the circumstances under which the Government obtained the photograph which was shown to CS-1. The Government notes that this claim is based upon Defendant's assumption that the "photograph" the affiant refers to had to be either the original photograph from the passport which Defendant had in his possession when he arrived in Chicago on May 8, 2002, or the original photograph from a prior passport which Defendant maintains was lost.[6] The Government responds that neither scenario assumed by Defendant is actually the case, and states in its Response that it is filing a separate classified ex-parte declaration, explaining how a photograph was taken from a passport recovered from Defendant's person.

The Court finds that Defendant has failed to make a "substantial preliminary showing" that the reference to the photograph was a misrepresentation or an omission, and for this additional reason, Defendant is not entitled to a hearing under Franks.[7]   Furthermore, Defendant has not demonstrated the relevance, or materiality, of this issue. There is no claim in the motion that the photograph that was shown was actually not of the Defendant.

_____

[6]Defendant argues that the Government could not have shown CS-1 the photograph from the passport he had with him when he entered the United States on May 8, 2002, based on the time that Judge Mukasey signed the material witness warrant.

[7]In his Reply, Defendant inappropriately raises for the first time the argument that any reference to the identification of Defendant should be stricken from the affidavit because CS-1 was shown a single photograph of Defendant. That argument was not raised in the Motion, and in any event, the issue is irrelevant, in that Defendant states no legal support for the argument that showing a witness a single identification photograph for use in preparing an affidavit in support of a material witness arrest warrant is improper.

**(4) - <u>Alleged Torture of Subject-1</u>**

In an attempt to meet his burden as to this claim, Defendant claims that he "sought an affidavit" from Binyam Muhammad but that he was unable to obtain one due to the regulations at Guantanamo Bay. Defendant has submitted an Affirmation of Andrew G. Patel, one of Defendant's attorneys, who states that he has spoken with Mr. Mohammed's attorneys. Mr. Patel states that Mr. Mohammad's counsel attempted to give Mr. Mohammad a copy of a draft affidavit in support of the instant motion, but that Mr. Mohammad would not sign it because the current regulations did not afford him an adequate opportunity to review it.

Mr. Patel then states that "[b]ased on a review of the unclassified documents in both Mr. Mohammad's case and Mr. Padilla's case, I have been authorized to inform this Court that were Mr. Mohammad permitted to sign an affidavit or testify before this Court, he would provide the following information under penalty of perjury." Patel Aff. ¶4.[8] Included in the recitation is a description of interrogation of Mr. Mohammad in Pakistan, performed by agents who allegedly represented themselves as FBI agents, allegedly accompanied by torture by Pakistanis. Even assuming that this Affirmation by Mr. Patel satisfies Defendant's preliminary burden of proof, Special Agent Ennis's affidavit states that a substantial portion of the information provided by Mr. Mohammad was corroborated by information obtained from an interview of CS-1 conducted at a separate time. The Court therefore finds that there was an independent source of the information for purposes of establishing probable cause. <u>See</u> <u>Awadallah</u>, 349 F.3d at 65.[9]

---

[8]If the documents that were reviewed are unclassified, those documents could have been, but have not been, submitted to the Court for review.

[9]The Court additionally rejects Defendant's challenge under the Fourth and Fifth Amendments. The Affirmation is based not on personal knowledge but on double hearsay. Furthermore, the constitutional rights which would arguably be violated by statements obtained by torture would be those of the person tortured, not of Defendant. Finally, if this Court were to

## RECOMMENDATION

Accordingly, the Court respectfully recommends that Defendant Jose Padilla's Motion to Suppress Physical Evidence and Issue Writs Ad Testificandum be **DENIED**.

The parties have ten (10) days from the date of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge for the Southern District of Florida. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND ORDERED** this 20th day of September, 2006 at Miami, Florida.

STEPHEN T. BROWN
U.S. MAGISTRATE JUDGE

cc:    Honorable Marcia G. Cooke
       AUSA Russell Killinger
       Kenneth Swartz, Esq.
       Jeanne Baker, Esq.
       Andrew Patel, Esq.
       AFPD Michael Caruso
       William W. Swor, Esq.

---

accept Defendant's unsupported argument that "the use of such illegally obtained information should not be tolerated" this would, in essence, require the Court to investigate in every case, as to every warrant, the manner in which statements made in support of that warrant were obtained.