UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 04-60001-CR-COOKE

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JOSE PADILLA, et al.,

        Defendants.
_____/

**ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION
AND DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

**THIS MATTER** was referred to the Honorable Stephen T. Brown, United States Magistrate Judge, for a Report and Recommendation on Defendant Jose Padilla's Motion to Suppress Statements, filed April 19, 2006 [D.E. 291]. On September 6, 2006, Judge Brown issued a Report and Recommendation in which he recommended that Defendant Jose Padilla's Motion to Suppress Statements be denied [D.E. 549]. On September 26, 2006, Defendant Padilla filed his Objections to Judge Brown's Report and Recommendation. This Court has conducted a *de novo* review of the record and the subsequent Objections, Response and Reply to Judge Brown's Report and Recommendation, and finds as follows:

    **I.**    **FACTS AND PROCEDURAL HISTORY**

Defendant Jose Padilla initially filed his Motion to Suppress Statements on April 19, 2006 [D.E. 291]. In the Motion, Padilla seeks to suppress statements made to FBI agents at Chicago O'Hare International Airport. Padilla contends that the statements are inadmissible because the FBI agents failed to administer Miranda warnings prior to interrogating him. The

1

Government's Response followed on May 4, 2006 [D.E. 318].  The Defendant subsequently submitted his Reply on May 17, 2006 [D.E. 344].  Judge Brown then conducted an evidentiary hearing on the motion on July 17, 18 and 20, 2006, and issued a Report and Recommendation denying the motion on September 6, 2006 [D.E. 549].  Consequently, Padilla filed his objections to the Magistrate Judge's Report and Recommendation on September 26, 2006 [D.E. 577].  The Government followed with its Response on October 13, 2006 [D.E. 607], countered by Padilla's Reply on November 9, 2006 [D.E. 653].

This Court sees no reason to restate and rehash Judge Brown's findings of fact.  Rather, this Court fully adopts the facts set forth in Judge Brown's Report and Recommendation.  Judge Brown adjudicated over three days of Hearing testimony and reviewed the pleadings on this matter.  Thus, Judge Brown, having sat through the hearings and listened to the testimony, is in a better position to weigh the credibility of the witnesses and the veracity of the evidence provided by both sides.  The Report and Recommendation contains a concisely summarized reiteration of the pertinent facts surrounding this motion. Judge Brown's findings and the inferences drawn from the uncontroverted testimony of the agents were both reasonable, logical and sound.  Furthermore, as duly noted by Judge Brown, "[t]here was no evidence to counter that presented by the Government, despite the fact that Defendant could have testified at the hearing without that evidence being used against him at trial, other than possibly as impeachment." Report and Recommendation [D.E. 549], Page 9.  Thus, the persuasive import of the agents' testimony is further buttressed by the utter lack of defense testimony or any other probative evidence to support defense allegations, aside from unsubstantiated assertions.

2

## II.     LEGAL STANDARD

In Miranda v. Arizona, 384 U.S. 436, the Supreme Court established a set of enumerated warnings required to be given suspects prior to custodial interrogation.[1]  Miranda's safeguards are intended to protect against erosion of the accused's constitutional rights to counsel and against self incrimination.  The Court held that these warnings are "an absolute prerequisite to interrogation" and noted that "[w]ithout the protections flowing from adequate warnings and the rights of counsel, all the careful safeguards erected around the giving of testimony, whether by an accused or any other witness, would become empty formalities in a procedure where the most compelling possible evidence of guilt, a confession, would have already been obtained at the unsupervised pleasure of the police."  Id. at 466 (citations omitted).  In instances where the accused is questioned or makes statements prior to being Mirandized, the crucial inquiry becomes whether the accused was faced with "custodial interrogation" at the time the statements were uttered.  If the accused was indeed subjected to "custodial interrogation" in the absence of a Miranda warning, the fruit of such questioning will not be admissible as evidence.  On the contrary, if the line of questioning does not qualify as "custodial interrogation," then the statements are deemed admissible despite the lack of Miranda's prophylactic safeguards.

Thus, to ascertain whether an accused's statements made in the absence of Miranda warnings will withstand admissibility attacks, the pivotal task becomes delineating precisely

---

[1] Specifically, the Court held that the accused must be apprised "in clear and unequivocal terms that he has the right to remain silent[, . . . which] must be accompanied by the explanation that anything said can and will be used against the individual in court."  Miranda, 384 U.S. at 467-69. Additionally, the Court explained that "[a]n individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation."  Id. at 471.

what is meant by "custodial interrogation." For the purposes of Miranda, a suspect is deemed to be placed in "custody" when there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (quotation marks omitted); United States v. McDowell, 250 F.3d 1354, 1362 (11th Cir. 2001). To determine whether there has been a "restraint on freedom of movement of the degree associated with a formal arrest," the court must consider "whether under the totality of the circumstances, a reasonable man in [defendant's] position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006).  The test is an objective one; the actual subjective beliefs of the suspect and the officer conducting the questioning are irrelevant to the inquiry. See Berkemer v. McCarty, 468 U.S. 420, 442 (1984).  Thus, "the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person." See Florida v. Bostick, 501 U.S. 429 (1991).  Likewise, the subjective beliefs of the questioning officer regarding whether the suspect is indeed free to go are irrelevant to the objective inquiry.  Interrogation, in this context, occurs when law enforcement action is "reasonably likely to elicit an incriminating response."  See Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980).

Notably, and particularly instructive in this case, in United States v. Moya, 74 F.3d 1117 (11th Cir. 1996), the Eleventh Circuit held that interrogation at the border constitutes a notable exception to the typical Miranda inquiry.  Specifically, the Court held that due to the sovereign's responsibility to protect and secure entry points into the United States, some degree of questioning and delay is  necessary and expected at the border.  Thus, "[b]ecause of this

4

expectation, *questioning at the border must rise to a distinctly accusatory level before it can be said that a reasonable person would feel restraints on his ability to roam to the degree associated with formal arrest.*" Id. at 1120 (emphasis added).  Denying the defendant's motion to suppress and affirming his conviction, the Eleventh Circuit drew a stark contrast between border interrogation and authoritative questioning in other contexts, and "stress[ed] that events which might be enough often to signal 'custody' away from the border will not be enough to establish 'custody' in the context of entry into the country." Moya, 74 F.3d at 1120.  See also United States v. Fernandez-Ventura, 132 F.3d 844 (1st Cir. 1998) ("The most significant circumstance is that this incident occurred in the course of a Customs inspection at our nation's border.  In the context of Custom's inspections, our assessment of whether an interrogation is custodial must take into account the strong governmental interest in controlling our borders.") (citations omitted).

Factors considered by the court in Moya to determine under what circumstances border interrogation rises to an accusatory level include whether the suspect was: physically moved or restrained by officers during the interview,  handcuffed or had guns drawn on him, booked or told of formal accusations, or told that he was under arrest.  See Moya, 74 F.3d at 1119, see also McDowell, 250 F.3d at 1362 (noting the unique nature of an interrogation at the border and considering the same factors articulated in Moya to ascertain whether defendant was in 'custody' prior to his arrest).  Additionally, the court considers  whether the suspect asked to leave or the officer told him he was not free to do so, or made admissions during the interview that would lead a reasonable person in his place to conclude that he would be arrested immediately.  Id. Notably, the length of the questioning is not a dispositive factor when determining whether it

amounts to 'custodial interrogation,' and "there is no fixed limit to the length of questioning." McDowell, 250 F.3d at 1363. The Eleventh Circuit specifically noted that when a suspect is prolonging the questioning by being deceitful or providing conflicting accounts of events, a prolonged interrogation is even more justifiable. See id. (holding that the four-hour duration of the inquiry did not convert it into a 'custodial interrogation').

### III.   ANALYSIS

In order for Defendant Padilla's airport statements to be suppressed on constitutional grounds, three requirements must be met. First, the officers must have questioned Padilla in the absence of constitutionally mandated Miranda warnings. Second, the questioning must have risen to the level of "interrogation." Finally, if Padilla was indeed interrogated without first being Mirandized, he must show that the interrogation was custodial in nature. The Government concedes that the officers never administered Miranda warnings despite interrogating Padilla. Thus, the only issue left for resolution is whether the Magistrate Judge erred in ruling that the airport interrogation was not "custodial" in nature.

Under Miranda, a suspect is placed in "custody" when there has been a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Beheler, 463 U.S. at 1125 (quotation marks omitted); McDowell, 250 F.3d at 1362. Since Padilla's interrogation was not preceded by a formal arrest, for custody to attach in this case, Padilla's freedom of movement would need to have been restrained to the degree associated with a formal arrest. To accurately assess whether Padilla's freedoms were restrained in this fashion, the Magistrate correctly conducted a highly fact-specific inquiry in order to ascertain whether under

the totality of the circumstances, a reasonable man in Padilla's position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave.  Brown, 441 F.3d at 1347.  The Magistrate accurately applied this objective test and disregarded the questioning agent's subjective beliefs regarding whether he could compel Defendant's testimony and/or had the ability to arrest Defendant.  Since the objective test is not premised on a fully informed declarant, the interrogating agent was under no duty to inform Padilla of the material witness warrant and grand jury subpoena he had procured in anticipation of the questioning, or of his particular interest in speaking with Padilla.

Additionally, the Magistrate correctly factored in the unique nature of this particular interrogation, namely, the fact that it was conducted at an entry point into the United States.  The factors considered by the Magistrate to determine that Padilla's border interrogation did not rise to a "distinctly accusatory level," mirrored those considered by the Eleventh Circuit in Moya. Specifically, the following facts contributed to the Magistrate's conclusion that Padilla was not in custody during his airport interrogation:

> he was not physically moved or restrained by officers on the way to the secondary interview; no handcuffs were employed and guns were not drawn; the defendant was not booked or told of formal accusations, nor told that he was under arrest; defendant did not ask to leave and the Inspector did not communicate to defendant that he was not free to do so; and the defendant made no admission during the interview that would have led a reasonable person in his place to conclude that he would be arrested immediately.

Report and Recommendation [D.E. 549], Page 11

The Magistrate's findings of fact, premised on uncontroverted FBI agent testimony, suggest that Padilla was faced with many of the same conditions as the Defendant in Moya. These conditions, and the lack of evidence indicating restraint, were crucial to the Eleventh

Circuit's decision that Moya was not in custody for <u>Miranda</u> purposes.  Likewise, Judge Brown based his decision on his factual findings which suggested that the restraint on Padilla's freedom did not rise to <u>Miranda</u>'s "custodial" level.  The defendant was not restrained, handcuffed or physically moved at any time.  The questioning was conducted in a large room by agents dressed in business attire.  Defendant was permitted to use the restroom and moreover, was provided with the opportunity to leave the premises and stay at a hotel overnight.  Furthermore, even after Padilla was shown the grand jury subpoena, he was offered the opportunity to travel to New York voluntarily.  These facts all have particularly compelling resonance in light of <u>Moya</u>'s more lenient standard for "custody" determinations at United States entry points.

Padilla's persistent reliance on <u>United States v. Griffin</u>, 7 F.3d 1512 (10th Cir. 1993), is misplaced.  The encounter in <u>Griffin</u>, deemed custodial by the Tenth Circuit, did not occur at an entry point to the United States, but rather, while the defendant was seeking to board a domestic flight.  In that particular instance, the court held that it was not unreasonable for a person in the defendant's position to feel the type of restraint that necessitates Miranda warnings.   On the other hand, as Judge Brown correctly recognized, this encounter occurred at an entry point to the United States, and was marked by evidence suggesting unrestrained voluntarily made statements by Padilla.  Thus, this encounter is more akin to the circumstances in <u>Moya</u>, and falls squarely within the contours of this Circuit's established <u>Miranda</u> jurisprudence regarding questioning at entry points to the United States.

Furthermore, Defendant Padilla's contention that the border questioning in this case is distinguishable from the cases cited by the Government is similarly unavailing.  Padilla claims that since the questioning was conducted by FBI officials and not customs agents, the facts in this

8

case are markedly different than those set forth in <u>United States v. Fernandez-Ventura</u>, 132 F.3d 844 (1st Cir. 1998).  However, this illusory distinction is premised on an erroneous foundation.  The crux of this argument is that the holdings in the border-interrogation cases somehow suggest that only questioning by customs agents are entitled to the more lenient Miranda standard articulated in <u>Moya</u>.  There is nothing in these holdings, however, to suggest that the more flexible standard is relegated to instances where customs officials are conducting the questioning.  Notably, in <u>Moya</u>, it was not customs officials but rather INS officials that questioned the defendant.

The court's language in <u>Moya</u> expressly dispels any inference that the degree of permissible security questioning at the border is contingent upon the type of agent conducting the inquiry.  The Eleventh Circuit places the focus on the questioning itself, rather than the title of the questioning agent.   Markedly, <u>Moya</u> notes that "some degree of questioning and delay is necessary and is to be expected at entry points to the United States," but does not specify that only a customs agent may conduct this questioning.  Additionally, the rationale and policy behind the more lenient Miranda standard is premised on "the strong governmental interest in controlling the borders."  <u>See</u> <u>Moya</u>, 74 F.3d at 1119.  This quintessential sovereign responsibility is effectuated by ensuring that the borders to this country are adequately policed and scrutinized.  Thus, it would not comport with the rule's protective scope to arbitrarily limit the class of agents who can conduct border inquiries, especially when the line of questioning serves the same fundamental sovereign security interests.

Additionally, there is no fixed limit to the length of questioning permitted to sustain an interrogation's non-custodial status.  <u>McDowell</u>, 250 F.3d at 1363.  In fact, the Eleventh Circuit

specifically noted that when a suspect is prolonging the questioning by being deceitful or providing conflicting accounts of events, a prolonged interrogation is even more justifiable. See id. (holding that the four-hour duration of the inquiry did not convert it into a 'custodial interrogation'). Thus, in this case it was reasonable for Judge Brown to find that the three-hour interrogation of Defendant Padilla did not rise to a custodial level.

Moreover, the four agents did not display any show of force for the majority of the interrogation. The Magistrate notes that no force whatsoever was exhibited "until, arguably, Agent Fincher turned Defendant's chair towards him and raised his voice." Report and Recommendation [D.E. 549], Page 12. The Magistrate held that this singular incident did not raise the line of questioning to a coercive nature. In fact, the Defendant's subsequent proclamation that "the interview [was] over and that it was time for [him] to go," only lends further credence to this determination. Defendant's own words suggest that he believed that he was free to leave, thus this Court need not even consider whether a "reasonable man" in this situation would feel restraint on his freedom of movement to the degree associated with formal arrest, since Padilla himself did not feel such restraint.

Finally, Magistrate Judge Brown did not err in deciding that Padilla's proffered classified evidence, offered to show that Agent Fincher was biased, was irrelevant. First, despite the opportunity to do so, Padilla failed to testify and refute Agent Fincher's portrayal of the events. Additionally, Agent Fincher's depiction of the events was corroborated by the testimony of the other agents whose testimony Padilla does not attack. Finally, *assuming arguendo*, that Agent Fincher did have a motive to lie, the Judge still correctly found that there was no evidence suggesting that Fincher actually did lie at the suppression hearing. Thus, Magistrate Brown's

decision to disallow introduction of the classified evidence on relevance grounds was a reasonable one sufficiently supported by the record.

### IV.    CONCLUSION

This Court finds that Defendant Padilla has failed to make a sufficient showing that his May 8, 2002 airport statements should be suppressed due to the lack of a knowing and voluntary waiver of his Miranda rights. Rather, the Government has adequately exhibited that despite the lack of a Miranda warning, the fruit of the interrogation conducted at the airport is admissible because such interrogation was not custodial in nature. The airport questioning did not rise to a level that would induce a reasonable man in Padilla's position to feel a restraint on his freedom of movement to such extent that he would not feel free to leave. Furthermore, this Circuit has recognized border-interrogations as a "notable exception" to the customary Miranda line of questioning. Accordingly, the Eleventh Circuit has adopted a more lenient standard to define the contours of permissible questioning in light of the compelling government interest in protecting and securing our borders. This Court finds that Defendant Padilla was not in "custody" when he made his airport statements to FBI agents, thus obviating the need for a Miranda warning.

Accordingly, it is

**ORDERED and ADJUDGED** that United States Magistrate Judge Stephen T. Brown's Report and Recommendation is **AFFIRMED and ADOPTED**.

**ADJUDGED** that Defendant Jose Padilla's Motion to Suppress Statements, filed April 19, 2006 [D.E. 291] is **DENIED**.

**DONE and ORDERED** in Chambers at Miami, Florida, this 17th day of November, 2006.

*/s/ Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to All Counsel of Record