# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 04-60001-CR-COOKE/Brown

**UNITED STATES OF AMERICA**

                  **Plaintiff,**

**vs.**

**JOSE PADILLA,**
        **a/k/a "Ibrahim,"**
        **a/k/a "Abu Abdullah the Puerto Rican,"**
        **a/k/a "Abu Abdullah Al Mujahir,"**

                  **Defendant.**

_____/

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND ISSUE WRITS AD TESTIFICANDUM

**THIS MATTER** was referred to the Honorable Stephen T. Brown, United States

Magistrate Judge, for a Report and Recommendation on Defendant Jose Padilla's Motion to

Suppress Physical Evidence and Issue Writs Ad Testificandum, filed May 31, 2006 [D.E. 365].

On September 20, 2006, Judge Brown issued a Corrected Report and Recommendation[1] in which

he recommended that Padilla's Motion to Suppress Physical Evidence and Issue Writs Ad

Testificandum be denied [D.E. 568].  On September 29, 2006, Defendant Padilla filed his Appeal

of Judge Brown's Report and Recommendation.  .  The Court has conducted a *de novo* review of

---

[1]  The initial Report and Recommendation [D.E. 548] was superseded by a Corrected
Report and Recommendation [D.E. 568] due to a computer error which caused footnote text to
be omitted in the original.

the issues that the objections to the Magistrate Judge's Report and Recommendation present, and being otherwise fully advised in the premises, and for the reasons more fully set forth below, the Report and Recomendation is Affirmed and Adopted.

## I.   FACTS AND PROCEDURAL HISTORY

Defendant Jose Padilla initially filed his Motion to Suppress Physical Evidence and Issue Writs Ad Testificandum on September 20, 2006 [D.E. 365].  In the Motion, Padilla argues that the Federal Rules of Criminal Procedure, as well as the Fourth and Fifth Amendments to the United States Constitution require this Court to suppress any and all physical evidence seized from Padilla in Chicago on May 8, 2002.  On that date, Padilla arrived at Chicago O'Hare International Airport aboard an international flight from Zurich, Switzerland.   The facts surrounding Defendant's arrest pursuant to a Material Witness Warrant are fully set forth in Judge Brown's Report and Recommendation on Defendant's Motion to Suppress Statements [D.E. 549].  This Court has adopted these findings of fact pursuant to its Order Adopting Magistrate's Report and Recommendation, filed on November 17, 2006 [D.E. 664].  Thus, this Court incorporates these uncontroverted facts into this Order, and adopts Judge Brown's factual findings by reference herein.

The Material Witness Warrant utilized to arrest Padilla, was signed by Chief Judge Michael B. Mukasey of the United States District Court for the Southern District of New York. The Warrant was issued on an affidavit sworn to by Special Agent Joe Ennis of the Federal Bureau of Investigation ("the Affidavit").  The information in the Affidavit comes exclusively from Ennis' participation in the investigation, conversations with law enforcement personnel,

2

and review of documents and reports prepared by other law enforcement officers.    These

documents and conversations relayed information almost exclusively culled from the questioning

of two government sources, Abu Zubaydah and Binyam Muhammad.[2]  In his Motion, Padilla

contends that the physical evidence seized from him on May 8, 2002 should be suppressed,

because the Affidavit allegedly failed to inform the issuing court of the following "facts," which

Defendant believes were "critical to the determination of probable cause:"[3]

> A.      That Abu Zubaydah was suffering from multiple gunshot wounds at the time he
>
>         provided the information included in the Affidavit;
>
> B.      What medical attention Abu Zubaydah had received or if medical attention, other
>
>         than drugs, was withheld while he was interrogated;
>
> C.      How the government came into possession of a passport that Mr. Padilla "lost;"
>
>         and

---

[2]  These two government sources were referred to in the Affidavit and subsequent pleadings as CS-1 and Subject-1, respectively.  The identities of these sources remained classified at the time the Affidavit and subsequent pleadings were filed.  It was not until the Government filed its Response to Padilla's Objections to the Magistrate's Report and Recommendation Denying the Motion to Suppress Evidence and Issue Writs Ad Testificandum that the identities of CS-1 and Subject-1 became declassified, and were divulged to be Abu Zubaydah and Binyam Muhammad.  Due to this declassification, this Court will refer to these individuals by their natural names.  When quoting directly from the Affidavit or Pleadings filed prior to the Government's Response to Defendant's Objections, this Court will insert brackets supplanting the individuals' natural names for the confidential designations for the sake of readability and to avoid confusion.

[3]  Aside from the alleged falsehoods and misrepresentations recited in Defendant's Motion, Defendant alleged additional falsehoods in his Reply and Objections to the Magistrate's Report and Recommendation.  As noted by Judge Brown in his Report and Recommendation, the additional claims were improperly raised since they were not included in Defendant's initial motion.  Likewise, and *a fortiori,* any additional claims first raised in Defendant's Objections to the Report and Recommendation, not considered by Judge Brown whatsoever, are improperly raised and will not be considered by this Court.

      D.      That Binyam Muhammad was subjected to torture between interrogation sessions with the FBI.

As a result of these alleged omissions and misrepresentations, Padilla moves this Court to suppress any and all physical evidence seized from him at Chicago O'Hare International Airport on May 8, 2002.  Padilla also requests an evidentiary hearing on this matter as well as issuance of Writs Ad Testificandum to compel the testimony of Abu Zubaydah and Binyam Muhammad. Padilla believes granting this hearing request and issuing Writs Ad Testificandum for these two individuals would lend further support to his Motion to Suppress Physical Evidence.  However, this Court must first determine whether granting the request for hearing and issuing Writs Ad Testificandum are warranted in this instance.

## II.    LEGAL STANDARD

In Franks v. Delaware, 438 U.S. 154 (1978), the Court established that under specifically delineated circumstances, a criminal defendant was entitled to attack the veracity of a sworn statement used by police to procure a search warrant.[4]  The Court ruled that in order to be entitled to a hearing under Franks, Defendant must first make a "substantial preliminary showing" that the affiant "knowingly and intentionally" or with "reckless disregard for the truth," included a false statement in the warrant affidavit.  Id. at 155-56. Notably, even allegations of negligence or innocent

---

[4] The Court's holding in Franks was rooted in the language of the bulwark of Fourth Amendment protection—the Warrant Clause.  The Warrant Clause provides that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ." In its ruling the Court held that the Warrant Clause "surely takes the affiant's good faith as its premise," thus opening the door to Defendant attacks on the credibility of warrant affidavits.  Franks, 438 U.S. at 164.

mistake are insufficient to support entitlement to a Franks hearing.  See O'Ferrell v. United States, 253 F.3d 1257, 1270-71 (11th Cir. 2001); United States v. Wuagneux, 683 F.2d 1343, 1355 (11th Cir. 1982).  However, once the threshold culpability showing is made, "if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."  Franks, 438 U.S. at 155-56; United States v. Arbolaez, 450 F.3d 1283, 1293 (11th Cir. 2006).

In order to mandate a Franks hearing, the Defendant's allegations must be "more than conclusory and must be supported by more than a mere desire to cross-examine."  Franks, 438 U.S. at 171.  Allegations must accuse the affiant of providing a deliberate falsehood or recklessly disregarding the truth in the warrant affidavit.  Id.; Arbolaez, 450 F.3d at 1294.  Furthermore, these claims and allegations must be substantiated by an offer of proof, which specifically points out the portion of the warrant affidavit that is allegedly fallacious, and a statement of reasons indicating why this is so.  Id.  Additionally, Defendant must provide affidavits or other sworn or reliable statements that support the allegations.  If such affirmations are not provided, their absence must be satisfactorily explained.  Id.

Notably, and particularly instructive with regard to this motion, *Franks challenges may only be directed at the affiant, and may not be used to impugn the veracity of any non-governmental informant.*  See Franks, 438 U.S. at 171 ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.").  This does not necessarily mean that all of the information recited by the affiant in the affidavit need be correct and fully accurate.  Rather, the statements are sufficient if they were reasonably believed to be truthful information when included by the affiant in the warrant affidavit.  Id. at 165.  The

5

Court in Franks concluded that the word "truthful" in this context is not used "in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge which sometimes must be garnered hastily." Id.

Finally, if the Defendant is able to establish perjury or reckless disregard for the truth by a preponderance of the evidence, the affidavit's false material must be excised and the remaining truthful content must be considered on its own. If, after this extraction, there still remains sufficient evidence to support a finding of probable cause, no Franks hearing is required. If, on the other hand, there is insufficient evidence to establish probable cause, the Fourth and Fourteenth Amendments entitle Defendant to a hearing. Id. at 171-2.

### III.    ANALYSIS

Under the first prong of the Franks analysis, this Court must consider whether the Defendant has made a "substantial preliminary showing" that the alleged omissions and misstatements in the warrant affidavit were the product of the affiant's "knowing and intentional" distortion of facts or affiant's "reckless disregard for the truth." Franks, at 155-56. If this preliminary hurdle is met, then this Court must consider whether the challenged statements or omissions were necessary to the finding of probable cause. However, in this instance, this Court need not even consider the second prong of the Franks analysis, since Defendant fails to meet Franks' first requirement.

Much of Defendant's argument in support of a hearing is misguided. Defendant spends considerable time focusing on the detainment conditions and treatment of government sources Abu Zubaydah and Binyam Muhammad. However, Franks challenges are premised on attacking the

6

veracity of the governmental *affiant*'s statements.  Thus, Defendant's evidence, which deals with misstatements and omissions regarding the condition and treatment of the government sources is inconsequential to the <u>Franks</u> inquiry, unless Defendant can prove that the affiant knowingly and intentionally or recklessly disregarded truthful material that should have been included in the warrant affidavit.  Defendant fails to make any showing at all to this effect.  Specifically, and most fatal to Defendant's <u>Franks</u> motion, Defendant fails to provide any proof whatsoever that Special Agent Ennis knew or should have known about any of the alleged omissions or misstatements in the affidavit.[5]

Furthermore, Special Agent Ennis states in the affidavit that the information he provides with regard to Abu Zubaydah's interview is "based on [his] review of the reports of [interviews of Abu Zubaydah by other agents] and on [his] conversations with other law enforcement officers."  Aff. ¶4.  Likewise, he states that as to Binyam Muhammad he has "reviewed reports prepared based on [an interview of Binyam Muhammad conducted in or approximately early April 2002], and ha[s] spoken with other law enforcement officers regarding this interview."  Aff. ¶5.  Defendant provides no evidence that these reviewed reports contained any information suggesting that the sources were tortured physically or mentally.  Furthermore, Defendant does not provide any supporting documentation to suggest that Special Agent Ennis' affidavit does not comport with any other aspect of the reports he reviewed or the conversations he had with other law enforcement officers.  There

---

[5]  As noted by the Government, the "knowledge" imputed to Special Agent Ennis is only that knowledge which he had or should have had on or about May 8, 2002—the date that he signed the Affidavit.  The critical inquiry must focus on the knowledge that was justifiably garnered by Special Agent Ennis through reading the pertinent documents and conversing with law enforcement personnel with regard to this matter.  Any facts which may have come to light subsequent to this date are irrelevant to the ultimate resolution of this issue.

is no averment in the affidavit that Special Agent Ennis had any personal knowledge of the circumstances alleged by Defendant as to the treatment of Zubaydah or Muhammad.  Thus, the information garnered through the reports Ennis reviewed and the discussions he had with law enforcement officers, and any deviations from this information in the affidavit, should have been the focal point of Defendant's <u>Franks</u> challenge.

Additionally, Defendant's requests for a hearing due to "the government's monopoly on access to relevant information" and for issuance of Writs Ad Testificandum fall short for the same reason.  Defendant attempts to circumvent <u>Franks</u>' substantial preliminary showing requirement, and access the hearing in the most roundabout of fashions.  However, the Court's holding in <u>Franks</u> very clearly articulates that Defendant's substantial preliminary showing is a condition precedent to the type of hearing that Defendant seeks in this case.   Since Padilla has made no showing whatsoever that the affiant in this case, Special Agent Ennis, knew or should have known about the aforementioned alleged misstatements and omissions, Defendant falls far short of <u>Franks</u>' substantial preliminary showing requirement.  Likewise, Defendant fails to make an adequate showing to support his request for Issuance of Writs Ad Testificandum.

The validity of Defendant's claims pertaining to the treatment, as well as the physical and mental states of these governmental sources is not a question appropriately before this Court at this juncture. The Defendant fails to articulate how questioning these detained governmental sources would help him ascertain the quintessential inquiry that must be the cornerstone of any <u>Franks</u> challenge.  Namely, what was in the purview of Special Agent Ennis' knowledge when he compiled and signed the Affidavit in support of the Material Witness Warrant ultimately utilized to arrest Padilla.

For the reasons set forth above, it is hereby

      **ORDERED and ADJUDGED** that United States Magistrate Judge Stephen T. Brown 's

Report and Recommendation is **AFFIRMED and ADOPTED**.  Accordingly, it is

      **ADJUDGED** that Defendant Jose Padilla's Motion to Suppress Physical Evidence and Issue

Writs Ad Testificandum [D.E. 365] is **DENIED.**

      **DONE and ORDERED** in Chambers at Miami, Florida, this 22nd day of January, 2007.

_____
MARCIA G. COOKE
United States District Judge

Copies provided to:

Magistrate Judge Stephen T. Brown

Counsel of Record

9