**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 04-60001-CR-COOKE/Brown (s)(s)(s)(s)(s)**

**UNITED STATES OF AMERICA**

**vs.**

**JOSE PADILLA,**
> **a/k/a "Ibrahim,"**
> **a/k/a "Abu Abdullah the Puerto Rican,"**
> **a/k/a "Abu Abdullah Al Mujahir,"**

**Defendant.**

_____/

**GOVERNMENT'S INITIAL MEMORANDUM REGARDING SCOPE OF**
**COMPETENCY HEARING FOR DEFENDANT PADILLA**

The United States of America, through undersigned counsel, hereby sets forth its recommendations regarding the competency hearing scheduled by this Court for Friday, February 16, 2007 at 1:30 p.m.

The Eleventh Circuit has made clear that a court should not conduct a "full-dress" hearing regarding a defendant's competence unless there is a bona fide question about his competency. *See, e.g.*, *United States v. Nickels*, 324 F.3d 1250, 1251-52 (11th Cir. 2003). The Court now has the benefit of the comprehensive evaluation of defendant Padilla conducted by neutral Bureau of Prisons (BOP) professionals pursuant to 18 U.S.C. § 4247. The BOP evaluation report, which finds Padilla competent, eliminates any bona fide doubt about his competency, especially viewed alongside Padilla's refusal to cooperate in the process and his earlier filing of an affidavit in support of his lawyers' pre-trial motions. Accordingly, at the February 16 hearing, the Court should address the BOP evaluation, allow cross-examination of the BOP professional(s) who authored it, and enter a finding of competency.

To the extent the Court wishes to permit additional testimony or evidence, the Court should limit its focus to Padilla's *present* functioning; specifically, his present ability to understand the proceedings against him and to communicate with counsel.  While we suspect the defense may seek to explore historical matters relating to Padilla's confinement as an enemy combatant, allowing the hearing to turn in that direction would be wholly unnecessary to decide Padilla's competence – if Padilla presently has the ability to understand the proceedings against him and communicate with counsel, he is competent and that is the beginning and the end of the analysis.  Moreover, expanding the February 16 hearing beyond that inquiry at the defense's request will cause needless delay and diversion of resources, and will raise a host of collateral matters, some relating to classified information, that may require prior decision from the Court.

### Background

Padilla is charged with conspiring to murder, maim, and kidnap individuals outside of the United States, in violation of 18 U.S.C. §§ 2 and 956(a)(1) (Count One); conspiring to provide material support to terrorists, in violation of 18 U.S.C. §§ 371 and 2339A(a) (Count Two); and providing material support to terrorists, in violation of 18 U.S.C. § 2339A(a) (Count Three).  Almost a full year after his indictment, on October 31, 2006, Padilla's lawyers filed a motion for a mental competency hearing, asserting for the first time that Padilla may not be competent to stand trial.  Subsequently, in December 2006, Padilla's lawyers filed a second motion for a competency hearing.  In conjunction with that motion, they filed publicly affidavits from two defense-hired clinicians, Angela Hegarty and Patricia Zapf.

On December 18, 2006, without objection from the government given the low threshold involved, the Court ordered a competency evaluation of Padilla pursuant to 18 U.S.C. §§ 4241 and

4247, to be conducted at FDC-Miami by BOP professionals.  On January 5, 2007, BOP officials advised this Court in writing that Padilla was not cooperating in the evaluation process.  The Court subsequently reminded Padilla's counsel that it expected the defendant's cooperation in that process.

On or about February 8, 2007, BOP served the evaluation report required by § 4247.

**Discussion**

1.     **It Is Now Clear that Padilla Is Competent and That There Is No Basis for a "Full-Dress" Competency Hearing.**

The Eleventh Circuit has held repeatedly that the nature and scope of a competency hearing is dictated by whether a "bona fide doubt" exists about the defendant's competence.  There is _no_ such doubt in this case, and accordingly, the Court need not go beyond the BOP's report and testimony from its author(s), and can easily resolve this issue, and make the necessary findings, at the scheduled February 16 hearing.

Under the governing statute, to declare a defendant incompetent, the court must find by a preponderance of the evidence that the defendant "is presently suffering from a mental disease or defect rendering him . . . unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  18 U.S.C. § 4241(d).  The Supreme Court and the Eleventh Circuit have explained that a defendant's competency turns on "whether [he] ha[s] 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and . . . 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Cruz*, 805 F.2d 1464, 1479 (11th Cir. 1986) (citation omitted); *see also Dusky v. United States*, 362 U.S. 402 (1960).

Although the statute requires that the court conduct a competency hearing prior to making the necessary findings, 18 U.S.C. § 4241(d), the Eleventh Circuit has emphasized that a district court need not conduct a "full-dress" hearing regarding a defendant's competence unless there is a bona fide question about his competency. *See, e.g.*, *United States v. Nickels*, 324 F.3d 1250, 1251-52 (11th Cir. 2003) ("We have held that a trial court may rule on a § 4241 motion of incompetency without benefit of a full dress hearing so long as the court has no bona fide doubt as to the competence of the defendant.") (quoting *Cruz*, 805 F.2d at 1479) (internal quotation marks omitted); *Scarborough v. United States*, 683 F.2d 1323, 1325 (11th Cir. 1982) ("In light of the fact that the medical report gave no indication of incompetency to stand trial, the [district] court had no reason to have the 'bona fide doubt' sufficient to prompt a hearing in the matter.").

As we will discuss at the hearing, the BOP report is thorough, detailed and unequivocal in its conclusion that Padilla is competent.  The report also walks through some of the contradictions, discrepancies and errors in the reports of the defendant's hired clinicians (neither of whom completed a report pursuant to 18 U.S.C. § 4247).  The BOP evaluation carries extra weight because, as Judge Jordan and other members of this Court have recognized, BOP examiners are fully familiar with the legal standard for competency and the requirements of § 4247, and their evaluations are required to be, and are, neutral, unlike those of the defense.  *See United States v. Orlansky*, Case No. 03-20951, Order dated Dec. 2, 2005 (noting that BOP evaluations "are indeed neutral" and rejecting argument to the contrary); *United States v. Rinchack*, 820 F.2d 1557, 1565 n.10 (11th Cir. 1987) ("while a court appointed psychiatrist may ultimately give testimony favorable to the defense or the

prosecution, his responsibility is to serve the court in a non-partisan manner").[1]

Simply put, in light of the outcome of the court-ordered evaluation embodied in BOP's report, there is <u>no</u> bona fide doubt about Padilla's competence to stand trial, and no basis for a more expansive hearing.

**2.      The Court Should Limit the Scope of Any Competency Hearing to Focus on Padilla's Present Ability to Understand and Communicate with Counsel.**

To the extent the Court, even in the absence of a bona fide doubt about Padilla's competence, wants to expand the hearing beyond testimony from the BOP professionals who authored the report, it should limit the parties' evidence solely to the issue of Padilla's present understanding and ability to communicate with his counsel.  As quoted above, in this Circuit, the key question for determining competency whether the defendant has "sufficient *present* ability to consult with his lawyer with a reasonable degree of rational understanding" and a rational as well as factual understanding of the proceedings against him.  *Cruz*, 805 F.2d at 1479.

It is true that, to be found incompetent, the defendant must in the first place be suffering from a severe mental disease or defect.  But there is a second, equally dispositive step in the analysis: even if Padilla suffers from such a disorder, he could not be found incompetent unless the Court also found that, as a result of the disorder, he lacks *at this time* the ability to understand the proceedings and to consult with counsel.  *See Watts v. Singletary*, 87 F.3d 1282,1286 (11th Cir. 1996)

_____

[1]The government does not know on what basis, if any, the defense obtained evaluations by its clinicians (Hegarty and Zapf), but by definition their task was to provide information helpful to the defense, not to assist the Court.  *See United States v. Williams*, 998 F.2d 258, 263 (5th Cir. 1993) ("A psychiatrist appointed under § 424[1] at the government's request or on the court's own motion is expected to be neutral and detached, and reports his findings to the court even if the defendant does not wish him to do so.  Under the Criminal Justice Act, 18 U.S.C. § 3006A, by contrast, the mental health expert fills a different role.") (citations and internal quotation marks omitted).

(competency inquiry "focuses on the criminal defendant's capacity to contribute sufficiently to his own defense to allow a fair trial"); *Medina v. Singletary*, 59 F.3d 1095, 1107 (11ᵗʰ Cir. 1995) ("Not every manifestation of mental illness demonstrates incompetence to stand trial; rather the evidence must indicate a present inability to assist counsel or understand the charges.") (internal quotation marks omitted); *United States v. Liberatore*, 856 358, 360 (N.D. Ohio 1994) (" In itself, the mere presence of a mental disease or defect is not sufficient to render a defendant incompetent . . . . The disease or defect must be of sufficient magnitude to compromise defendant's mental capacities to the point that he functions below the level established in *Dusky*.").

The threshold for finding competence at this step of the analysis is extremely low – a defendant does *not* have to grasp everything happening in his case as effectively as an attorney, or comply with all of his lawyers' demands. *See, e.g., United States v. Hogan*, 986 F.2d 1364, 1373 (11ᵗʰ Cir. 1993) ("Even perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers.  That level of comprehension is not a requirement of competency.  All that is required is that [the defendant] have a rational as well as a factual understanding of the proceedings against him and had sufficient present ability to consult with his attorney with a reasonable degree of rational understanding."); *see also United States v. Glover*, 596 F.2d 857, 864-65 (9ᵗʰ Cir. 1979) ("The fact that a defendant might not understand the proceedings unless they are explained to him in simple language would put an additional burden upon counsel, but certainly does not establish that the defendant is incompetent to stand trial."). Neither does a defendant have to be able to recall every fact his lawyers may seek to elicit.  *See Adams v. Wainwright*, 764 F.2d 1356, 1361 (11ᵗʰ Cir. 1985) ("While a defendant's inability to remember his participation in a crime may have some bearing on whether he is mentally

incompetent, it is possible for a defendant to have no recall of his involvement in a crime and yet fully understand the proceedings against him and cooperate meaningfully with his attorney in his defense. The right not to be tried and sentenced unless mentally competent does not extend so far as to ensure total recall."). And a defendant certainly does not have to be able to aid the cross-examination of witnesses or develop trial strategy. *See United States v. Butterfly*, 1995 WL 729484, at *2 (9th Cir. Dec. 7, 1995) ("We have found no authority . . . requiring that the defendant be able to assist his attorney in crafting cross-examination or developing strategy to be found competent.").

The BOP report makes clear that Padilla has sufficient ability at this time to understand the proceedings and to communicate with his counsel. That conclusion is already evident from the record. For example, as the report observes, and we have highlighted repeatedly for the Court, barely two months ago – after his lawyers filed their first competency motion but before their second one – those same lawyers sought and obtained from Padilla a signed affidavit stating that he had read and agreed with his lawyers' written allegations about his supposed mistreatment at the Brig (of which he would have been the only first-hand source initially).[2] That fact alone demonstrates Padilla's ability to assist in his defense, as well as his lawyers' confidence in his abilities. Padilla's more recent decision to refuse to cooperate in psychiatric testing by BOP – despite having participated in similar tests for the benefit of his hired experts – shows in a different way that he understands what is at stake in this proceeding. And we are not aware of any instance where this Court or the magistrate judge has observed any behavior by Padilla in the courtroom raising a

---

[2]*See* DE 695, Dec. 1. 2006, Ex. A. In his affidavit, Padilla stated that he (1) "make[s] this Affidavit from my own personal knowledge," (2) has "reviewed the motion [to dismiss for outrageous government conduct] my attorneys filed on my behalf," and (3) "[t]he factual allegations contained in that motion, as they pertain to the treatment I received while detained as an enemy combatant, are true." *Id.*

concern about whether he was understanding the nature of the proceedings around him. *See United States v. Vramos*, 797 F.2d 1146, 1150 (2ⁿᵈ Cir. 1986) (citing as a factor in determining competence whether the court has observed any unusual behavior).[3]

Thus, for purposes of determining Padilla's competency today, the Court need not consider whether he suffers from a severe mental disease or defect, and can simply make that assumption and move to the second, and in this instance, decisive, step of the analysis. The government respectfully recommends that the Court follow this approach. Equally important, the Court also need not and should not consider the circumstances allegedly giving rise to Padilla's supposed condition. As the Court is aware, Padilla's lawyers have alleged that he suffers from "post traumatic stress disorder" attributable to the mistreatment he allegedly suffered during his military detention as an enemy combatant of the United States. The BOP report persuasively undermines that proposed diagnosis, and does not corroborate the factual allegations beneath it. But even if the Court were to reject the conclusions of neutral BOP professionals, and accept lock, stock and barrel Padilla's allegations of mistreatment as well as the diagnosis of his hired experts that he suffers from post traumatic stress disorder, there *still* would not be any basis to dispute, on this record, that Padilla "ha[s] 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and . . . 'a rational as well as factual understanding of the proceedings against him.'" The Court should therefore start with that issue, and focus the hearing on Padilla's *present* functioning.

This approach is not only legally appropriate, but also makes practical sense. There is every reason to believe that the defense will improperly seek to use a competency hearing as a vehicle to

---

[3]We have previously addressed the *ex parte* hearings that occurred regarding Padilla's competency. The government remains unaware of what occurred during those discussions or what if anything the Court observed.

engage the Court in detailed factfinding about the alleged conditions of Padilla's detention – an exercise that otherwise should not occur as a matter of law. Such factfinding would require an enormous expenditure of resources by the parties and the Court, at a time when all participants in the case should be focused on trial preparation. Factfinding regarding Padilla's detention would necessarily require testimony from witnesses, review of potentially hundreds of pages of documents and, almost inevitably, special procedures to deal with classified information; of course, the defense's demands may go well beyond what is permissible. There is no reason for the Court to head down that path when it is already apparent from the record that, *even assuming* the truth of Padilla's allegations and the accuracy of a diagnosis of post traumatic stress syndrome, he is competent to stand trial.[4] For this reason as well, the Court should limit the scope of any competency hearing to the issue of Padilla's present understanding and ability to communicate with counsel. Only if the Court finds that it cannot find Padilla competent on that basis should the Court consider expanding the hearing to other issues.

### Conclusion

For the foregoing reasons, the Court should limit the February 16 hearing regarding Padilla's competency to testimony from the BOP examiner(s) who completed the report, and enter a finding that Padilla is competent to stand trial. Alternatively, to the extent the Court wants to consider additional evidence before making that finding, it should focus the parties on the narrow, and

---

[4]To be clear, the government does not agree with Padilla's allegations of mistreatment, the diagnosis of post traumatic stress disorder, or any characterization of such a disorder as severe in this instance. Our point is a simple one: the Court can accept all of these claims as true, and still enter a finding of competency because there is no persuasive evidence that Padilla presently lacks the ability to understand the proceedings or consult with his lawyers, as those requirements as interpreted in the case law.

completely dispositive, issue of whether Padilla has sufficient present ability to understand the proceedings and communicate with counsel.

Respectfully submitted,

R. ALEXANDER ACOSTA
United States Attorney

s/ John C. Shipley
RUSSELL R. KILLINGER
Fla. Bar No. 0312851
BRIAN K. FRAZIER
Court No. A5500476
JOHN C. SHIPLEY
Fla. Bar No. 069670
Assistant United States Attorneys
STEPHANIE K. PELL
Court No. A5500301
Attorney, United States Department of Justice
National Security Division
99 N.E. 4th Street, 8th Floor
Miami, Florida 33132
Tel: (305) 961-9000
Fax: (305) 530-4675
Russell.Killinger@usdoj.gov
Brian.Frazier@usdoj.gov
John.Shipley@usdoj.gov
Stephanie.Pell@usdoj.gov

## CERTIFICATE OF SERVICE

I  hereby certify that on February 9, 2007, the undersigned electronically filed the

foregoing document, Government's Initial Memorandum Regarding Scope Of Competency Hearing

For Defendant Padilla, with the Clerk of the Court using CM/ECF.


s/ John C. Shipley
John C. Shipley
Assistant United States Attorney